UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| TYSHEIM JOHNSON, : | |
| *Plaintiff*, : | |
| : | |
| v. : | CASE NO. 3:24-cv-01938 (KAD) |
| : | |
| JOHN CEREJO, *et al.*, : | |
| *Defendants*. : | |

**INITIAL REVIEW ORDER**

Plaintiff Tysheim Johnson is a pre-trial detainee in the custody of the Connecticut Department of Correction.[1] He has filed a Complaint *pro se* pursuant to 42 U.S.C. § 1983, against Officer John Cerejo and the Meriden Police Department.[2] Johnson seeks damages and injunctive relief for violation of his rights under the Eighth, Fourteenth, and Twenty-fourth Amendments to the United States Constitution.

The Court issues this initial review order pursuant to 28 U.S.C. § 1915A, and allows some of Johnson's claims to proceed.

**ALLEGATIONS**

On September 13, 2024, Johnson was sitting in the passenger seat with his girlfriend in her car. ECF No. 1 at 3, 6. Two unmarked police vehicles "boxed in" Johnson's car, and two officers emerged from the police truck parked in front of the car. *Id.* at 6. One of these officers went to the passenger side of the car and asked Johnson's girlfriend to roll down the window and

---

[1] The Court may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). Publicly available information on the Department of Corrections website shows that Johnson is being held at the New Haven Correctional Center and remains unsentenced.

[2] Johnson has not specified whether he sues Cerejo in his individual or official capacity. But as he seeks damages against him, the Court assumes he means to assert only individual capacity claims. To the extent he asserts official capacity claims for monetary damages against Cerejo (a state employee), such claims are dismissed as barred by the Eleventh Amendment. *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

unlock the doors. *Id.* After she unlocked the doors, Officer John Cerejo opened the passenger-side door, grabbed Johnson's arm, pulled him out of the vehicle, and placed him in handcuffs. *Id.* Cerejo told Johnson that he was detaining Johnson for selling drugs. *Id.* Cerejo then began searching Johnson and another officer began searching Johnson's car and questioning Johnson's girlfriend. *Id.*

While searching Johnson, Cerejo inserted his finger into Johnson's anus. *Id.* Johnson asked Cerejo what he was doing. *Id.* Cerejo denied that he inserted his finger in Johnson's anus. *Id.* Cerejo then uncuffed Johnson and released him after finding no drugs on his person. *Id.*

## DISCUSSION

The Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(a)-(b).

In reviewing a *pro se* complaint, the Court must assume the truth of the allegations and interpret them liberally to "raise the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

Johnson asserts that Cerejo violated his rights under the Eighth, Fourteenth, and Twenty-fourth Amendments. *See* ECF No. 1 at 2. Johnson seeks monetary damages and injunctive relief. *See id.* at 5.

### *Twenty-fourth Amendment and Eighth Amendment Claims*

The Twenty-fourth Amendment does not apply here. That Amendment provides, in relevant part, that "[t]he right of citizens of the United States to vote . . . shall not be denied or abridged by the United States or any State by reason of failure to pay any poll tax or other tax." U.S. Const. amend. XXIV § 1. Johnson's allegations in no way, shape, or form implicate the Twenty-fourth Amendment.

Nor does the Eighth Amendment apply. "The Eighth Amendment applies to the punishment of convicted offenders and does not regulate pre-conviction interactions between the police and the public." *Conroy v. Caron*, 275 F. Supp. 3d 328, 352 (D. Conn. 2017). Because the substance of Johnson's Complaint concerns his pre-conviction interaction with police, the Eighth Amendment is not implicated by Johnson's allegations.

### *Fourth Amendment Claims*

Nor does the Fourteenth Amendment apply to these allegations. The Court construes Johnson's Complaint as alleging an unconstitutional search and seizure. *See* ECF No. 1 at 3. "In the context of police conduct that amounts to a 'search' or 'seizure' under the Fourth Amendment, it is well-established that its constitutionality should be evaluated under the more specific protections of the Fourth Amendment rather than under the more generalized due process protections of the . . . Fourteenth Amendment." *Spicer v. Burden*, 564 F. Supp. 3d 22, 31 (D. Conn. 2021). Accordingly, the Court analyzes Johnson's claims under the Fourth

Amendment rather than the Fourteenth Amendment.

The Fourth Amendment protects the public from "unreasonable searches and seizures." U.S. Const. amend. IV. "Warrantless searches and seizures are 'per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *United States v. Weaver*, 9 F.4th 129, 138 (2d Cir. 2021) (en banc) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). As an exception relevant here, the Supreme Court has long permitted officers to "conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)).

Such "*Terry* stops" permit a pat down, or frisk, of a detainee's outer clothing for the presence of a weapon as a protective measure if the officer has an articulable suspicion that the individual is armed and dangerous. *See Terry*, 392 U.S. at 28; *Arizona v. Johnson*, 555 U.S. 323, 326-27 (2009). *Terry* stops also permit an officer to conduct a protective search of the passenger compartment of a vehicle for weapons when the officer has a reasonable basis to think the individual with whom he is dealing is armed and potentially dangerous. *See Michigan v. Long*, 463 U.S. 1032, 1051-52 (1983).

"Reasonable suspicion to conduct a *Terry* stop exists when a law enforcement officer can 'point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion.'" *United States v. Bell*, 733 F. App'x 20, 21 (2d Cir. 2018) (quoting *Terry*, 392 U.S. at 21 (alteration omitted)). A *Terry* stop is not necessarily unreasonable even if the facts available suggest "less than a 'fair probability' of wrongdoing." *United States v. Padilla*, 548 F.3d 179, 186-87 (2d Cir. 2008) (quoting *United States v. Sokolow*,

4

490 U.S. 1, 7 (1989)). An officer need only have a "reasonable basis to think that the person to be detained 'is committing or has committed a criminal offense.'" *United States v. Bailey*, 743 F.3d 322, 332 (2d Cir. 2014) (quoting *Johnson*, 555 U.S. at 326).

In reaching this conclusion, an officer is "entitled to draw on [his] own experience and specialized training to make inferences" but may not "rely on an inchoate and unparticularized suspicion or hunch." *Padilla*, 548 F.3d at 187 (internal citations and quotation marks omitted). In determining whether an officer had reasonable suspicion for a *Terry* stop, a court "must consider the totality of the circumstances surrounding the stop" and "evaluate those circumstances through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training." *United States v. Bayless*, 201 F.3d 116, 133 (2d Cir. 2000) (internal citations and quotation marks omitted).

A *Terry* stop begins when an individual is seized for purposes of the Fourth Amendment. *See, e.g.*, *United States v. Price*, 599 F.2d 494, 498-99 (2d Cir. 1979) (treating the question of when a *Terry* stop began and when a defendant was seized as identical). A seizure requires "*either* physical force . . . *or*, where that is absent, *submission* to the assertion of authority." *United States v. Swindle*, 407 F.3d 562, 572 (2d Cir. 2005) (quoting *California v. Hodari D.*, 499 U.S. 621, 626 (1991)). As to the latter circumstance, an individual is seized when, "under the circumstances, a reasonable person would have believed that he was not free to leave." *United States v. Compton*, 830 F.3d 55, 65 (2d Cir. 2016) (quoting *United States v. Peterson*, 100 F.3d 7, 10 (2d Cir. 1996)).

Furthermore, a "seizure amounting to a *Terry* stop occurs when an officer uses his patrol car to 'box in' an individual's car, preventing the suspect from driving away." *United States v.*

5

*Lopez*, 432 F. Supp. 3d 99, 110 (D. Conn. 2020) (citing *Pane v. Gramaglia*, 509 Fed. App'x 101, 103 (2d Cir. 2013) (holding, at qualified immunity stage, that it was clearly established that blocking a parked car was a seizure)).

Here, therefore, the *Terry* stop began when officers "boxed in" Johnson's vehicle by parking in front of and behind it. *See* ECF No. 1 at 6. The question then is whether officers had reasonable suspicion to conduct that *Terry* stop—that is, whether officers had a reasonable basis to think that Johnson was committing or had committed a criminal offense. *See Bailey*, 743 F.3d at 332.

Johnson alleges that Cerejo claimed he was stopping Johnson for making a drug sale. ECF No. 1 at 6. While the basis for Cerejo's belief that Johnson sold drugs is unknown, "[a] police officer's observation of what he reasonably believes to be a drug transaction in progress clearly supports a reasonable suspicion sufficient to stop the suspect for further investigation." *Crenshaw v. City of Mount Vernon*, 372 F. App'x 202, 207 (2d Cir. 2010). Johnson also alleges, however, that he was simply sitting in his car with his girlfriend. He further alleges that no contraband was found and he was released at the scene. Construed liberally, the Court concludes that Johnson has alleged that the officers lacked reasonable suspicion to conduct a *Terry* stop.

Even if a *Terry* stop was authorized under the circumstances, the conduct that followed the stop, as alleged, was not reasonable. "To satisfy the Fourth Amendment's reasonableness requirement, officers conducting stops on less than probable cause must employ the least intrusive means reasonably available to effect their legitimate investigative purposes." *Bailey*, 743 F.3d at 339 (quotation marks and citations omitted). "The rule does not operate categorically to authorize or prohibit particular forms of restraint in conjunction with an investigatory stop."

6

*Id.* Instead, this rule demands "careful consideration of the circumstances in which challenged restraints were used." *Id.* at 339-40. "With these principles in mind, courts have upheld a range of restraints incident to a *Terry* stop, from the patdown at issue in *Terry* itself, to the drawing of firearms, to the use of handcuffs, all depending on the circumstances presented." *Id.* at 340 (citing *United States v. Newton,* 369 F.3d 659, 674 (2d Cir. 2004) (collecting cases)).

Thus, if the *Terry* stop was authorized, Cerejo reasonably removed Johnson from the vehicle, handcuffed him, and patted him down. *See Alexander*, 907 F.2d at 273 (upholding *Terry* frisk after car stop of suspect whom police witnessed engaging in narcotics transaction, explaining that "this Court has repeatedly acknowledged the dangerous nature of the drug trade and the genuine need of law enforcement agents to protect themselves from the deadly threat it may pose").

But the scope of a *Terry* search is limited. The "sole justification" for a protective seizure and search for weapons under *Terry* "is the protection of the police officer and others nearby." *Terry*, 392 U.S. at 29. Thus, the pat down search must be "confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." *Id.* A pat down search that exceeds that limited purpose is unreasonable under the Fourth Amendment. *See, e.g.*, *Sibron v. New York*, 392 U.S. 40, 65 (1968) (holding that officer exceeded scope of *Terry* pat down search by "thrust[ing] his hand into Sibron's pocket and t[aking] from him envelopes of heroin.").

It is established that "a non-consensual search of a suspect's bodily cavities for evidence of a crime" exceeds the scope of a *Terry* search. *Cook v. Phillips*, 2023 WL 257899, at *4 (D. Conn. 2023) (citing *Adams v. Williams*, 407 U.S. 143, 146 (1972) ("The purpose of [a *Terry*]

7

search [for weapons] is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence.")). Cerejo's act of inserting his finger into Johnson's anus during a pat down search, ECF No. 1 at 6, is far more invasive than is permitted during a *Terry* stop and was thus unreasonable. Johnson's Fourth Amendment unreasonable search claim may therefore proceed to service.

Finally, while Johnson may pursue damages from Cerejo on his Fourth Amendment claims for unreasonable search and seizure, he may not pursue injunctive relief against Cerejo. "A plaintiff may not obtain injunctive relief against a state official in [his] individual capacity." *Taylor v. Dorantes*, 2019 WL 13293562, at *4 (D. Conn. 2019). And "[a] plaintiff may proceed for injunctive or declaratory relief against a defendant in his or her official capacity only to the extent he alleges an ongoing constitutional violation." *Bey v. Megget*, 2025 WL 27463, at *6 (D. Conn. 2025).

Here, Johnson alleges no facts suggesting an ongoing constitutional violation. Accordingly, Johnson may not pursue injunctive relief against Cerejo. Nor may Johnson pursue damages or injunctive relief against the remaining defendant—the Meriden Police Department—because "[a] municipal police department . . . is not a municipality nor a 'person' within the meaning of section 1983" and is thus "not subject to suit under section 1983." *Nicholson v. Lenczewski*, 356 F. Supp. 2d 157, 164 (D. Conn. 2005) (collecting cases).

## ORDERS

Johnson may pursue damages from Cerejo on his Fourth Amendment claims for unreasonable search and seizure. All other claims are dismissed, and all other Defendants are terminated.

The Court enters the following additional orders.

(1) **The Clerk shall** mail a waiver of service of process request packet containing the Complaint and this Order to John Cerejo at the Meriden Police Department, 50 W. Main Street, Meriden, CT 06451, within **twenty-one (21) days** of this Order, and report to the Court on the status of the waiver request on the thirty-fifth day after mailing. If the defendant fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service on the defendant in his individual capacity and the defendant shall be required to pay the cost of such service.

(2) **The Clerk shall** send Johnson a copy of this Order.

(3) **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Meriden City Corporation Counsel, Matthew McGoldrick, 142 E. Main Street #240, 142 E. Main Street, Meriden, CT 06450.

(4) Cerejo shall file his response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If he chooses to file an answer, he shall admit or deny the allegations and respond to the cognizable claim recited above. He also may include all additional defenses permitted by the Federal Rules.

(5) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed by January 5, 2026. Discovery requests shall not be filed with the court.

(6) All motions for summary judgment shall be filed by February 5, 2026.

(7) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8) If Johnson changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that **he MUST notify the court. Failure to do so can result in the dismissal of the case**. Johnson must give notice of a new address even if he is incarcerated. Johnson should write **PLEASE NOTE MY NEW ADDRESS** on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Johnson has more than one pending case, he should indicate all the case numbers in the notification of change of address. Johnson should also notify the defendants or the attorney for the defendants of his new address.

(9) Johnson shall utilize the Prisoner Efiling Program when filing documents with the court. Johnson is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on defendant's counsel by regular mail.

It is so ordered.

Dated at Bridgeport this 5th day of June 2025.

/s/ *Kari A. Dooley*
Kari A. Dooley
United States District Judge